AO 106 (Rev. 04/10) Application for a Search Warrant (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT

for the
Western District of Oklahoma

**FILED**

JAN 2 2 2020

CARMELITA REEDER SHIN
CLERK, U.S. DISTRICT COURT
BY_____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

one black Apple iPhone XS, Model Number: MT962VC/A,
Serial Number: G0NYW454KPFR, Phone Number:
405-836-3120, currently located in a secure evidence
storage at the DEA office in Oklahoma City, Oklahoma

)
)
)
)
)
)

Case No. M-20- *38* -SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of Methamphetamine with Intent to Distribute |
| 21 U.S.C. § 846 | Drug Conspiracy |

The application is based on these facts:

See attached Affidavit of Task Force Officer John Parker Ellis, Drug Enforcement Administration (DEA), which is incorporated and made a part hereof by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

John Parker Ellis, Task Force Officer (DEA)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **1 - 22 - 20**

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

AUSA: Matthew P. Anderson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

**IN THE MATTER OF THE SEARCH OF ONE BLACK APPLE IPHONE XS, MODEL NUMBER: MT962VC/A, SERIAL NUMBER: G0NYW454KPFR, PHONE NUMBER: 405-836-3120, CURRENTLY LOCATED IN SECURE EVIDENCE STORAGE AT THE DEA OFFICE IN OKLAHOMA CITY, OKLAHOMA**

**Case No. M-20-_38_-SM_____**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, John Parker Ellis, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device identified below and in Attachment A currently in law enforcement possession—and the extraction from that property of electronically stored information described in Attachment B, which constitutes evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

2.      I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to investigate violations of laws of the United States and execute warrants pursuant to Federal Rule of Criminal Procedure 41. I am currently employed as an Investigator with the Moore Police Department. I have been a certified police officer in the State of Oklahoma since June 2011. I am presently assigned as a Task Force Officer ("TFO") for

the Drug Enforcement Administration ("DEA") in Oklahoma City, Oklahoma, and have been since January 2019. As a TFO, I am authorized to conduct criminal investigations of violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3.      I have worked with the Moore Police Department since June 2011. I completed the basic CLEET academy in September of 2011. I have been assigned to the patrol division at the Moore Police Department for the past 8 years. I was assigned to a special assignment with the DEA Oklahoma City High Intensity Drug Trafficking Areas ("HIDTA") Task Force in January 2019 and continue to work in that assignment as of the date of this affidavit

4.      During my employment in law enforcement, I have received training and conducted investigations related to illicit drugs and the distribution of illicit drugs in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and others. I have participated in many aspects of drug investigations including the following: undercover operations; surveillance; search warrants; arrests; reviewing taped conversations and drug records, along with debriefing defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations.

5.      I have participated in numerous investigations involving individuals who have been involved and have personal knowledge of transporting and concealing narcotics, as well as, the amassing, spending, converting, transporting, distributing,

2

laundering and concealing of proceeds from narcotics trafficking and smuggling.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7. The property to be searched is one black Apple iPhone XS, Model Number: MT962VC/A, Serial Number: G0NYW454KPFR, Phone Number: 405-836-3120, hereinafter the **DEVICE**. The **DEVICE** is currently located in secure evidence storage at DEA Oklahoma City, located at 901 NE 122nd Street, Ste 210, Oklahoma City, Oklahoma.

8. The requested warrant would authorize the forensic examination of the **DEVICE** for the purpose of identifying electronically stored data, particularly described in Attachment B, which constitute evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846. The requested warrant would also authorize the seizure of the items and information specified in Attachment B.

## FACTUAL BACKGROUND

9. The **DEVICE** was seized incident to arrest from Eugenio Gadiel **BERNAL-RUIZ** for a violation of 21 U.S.C. § 846, conspiracy to possess with intent to distribute and to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a

3

Schedule II controlled substance.

10.     In September 2019, DEA Oklahoma City initiated an investigation targeting a methamphetamine drug trafficking organization operating in Oklahoma City, Oklahoma. A DEA Cooperating Source identified **BERNAL-RUIZ** as a methamphetamine distributor operating in Oklahoma City, Oklahoma.

11.     On October 9, 2019, an officer acting in an undercover capacity conducted a controlled purchase of 4 ounces of methamphetamine from **BERNAL-RUIZ**. Also in October 2019, **BERNAL-RUIZ** was the front seat passenger in a vehicle during a traffic stop that led to the seizure of $99,980 U.S. Currency. **BERNAL-RUIZ** was read the *Miranda* Warning and consented to answer questions without an attorney present following the money seizure. **BERNAL-RUIZ** admitted he knew he was transporting currency and admitted he received a payment of $2,000 to complete the money transport. **BERNAL-RUIZ** was released without charges filed.

12.     On December 20, 2019, members of DEA Oklahoma City attempted a second controlled purchase of methamphetamine from **BERNAL-RUIZ**. This attempted controlled purchase was arranged by contacting **BERNAL-RUIZ** at the phone number currently associated with the **DEVICE**, i.e., 405-836-3120. **BERNAL-RUIZ** communicated with the undercover officer and negotiated price and quantity of methamphetamine but the transaction did not occur. The transaction was canceled after **BERNAL-RUIZ** stated that he was unable to get any methamphetamine from his source of supply.

4

13.    On January 9, 2020, members of DEA Oklahoma City participated in a controlled delivery of a vehicle loaded with suspected methamphetamine. As a result of that operation, members of DEA Oklahoma City conducted a consensual search of 5812 NW 33rd Street, Oklahoma City, Oklahoma. Upon arrival, members of DEA Oklahoma City observed **BERNAL-RUIZ** in the yard of the house next door. **BERNAL-RUIZ** was directed inside the house next door before being requested to come back outside. **BERNAL-RUIZ** was arrested for his activities in October through December 2019 by law enforcement who were at the scene to conduct the search.

14.    Subsequent to his arrest, **BERNAL-RUIZ** was read the Miranda Warning and he agreed to answer questions without an attorney present. **BERNAL-RUIZ** stated he had been unemployed for approximately two years. **BERNAL-RUIZ** admitted that he would obtain methamphetamine from his source of supply for further distribution. **BERNAL-RUIZ** stated that he would deal with half-pound and whole-pound quantities of methamphetamine. **BERNAL-RUIZ** further stated that when he was arrested with money in October 2019, he was on an "errand" for an individual in Mexico and that he believed that he was transporting drug proceeds for this individual. **BERNAL-RUIZ** was in possession of the **DEVICE** when he was arrested. **BERNAL-RUIZ** provided the code to open the **DEVICE**, but he did not provide consent to search the **DEVICE**.

15.    The **DEVICE** is currently located in secure evidence storage at DEA Oklahoma City, located at 901 NE 122nd Street, Ste 210, Oklahoma City, OK. In my training and experience, I know that the **DEVICE** has been stored in a manner in which

its contents are (to the extent material to this investigation) in substantially the same state as they were when the **DEVICE** first came into the possession of DEA.

16.    Based on my training, experience, and research; I know that the **DEVICE** has capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

17.    From my training and experience, I know that drug distribution is often a conspiratorial crime. Individuals who possess controlled substances with the intent to distribute them typically do so in groups with the assistance of others. Drug distributors often use their cell phones to communicate with other members of the drug trafficking organization. Records of these communications and the contact information of the smugglers are often saved in the individual's phone. Drug distributors also often take and store photographs of themselves with controlled substances and the proceeds of drug sales, and usually take or store these photographs using their cellular phones.

18.    An examination can reveal the approximate location of the **DEVICE** and the user by associating a specific date and time with: historical GPS data, historical cell-site data, and logs of Wi-Fi networks. Additionally, an examination can reveal the **DEVICE**'s unique identifiers (phone number, IMEI, IMSI, etc.). These unique identifiers can be used to compel material records from the cell phone service provider such as call logs, billing information, and historical cell-site data.

6

19.    As a result of my training and experience, I know members of drug trafficking organizations utilize cell phones to contact lower level drug distributors as well as higher level managers within the organization. I believe a search of the **DEVICE** will provide information about additional unknown co-conspirators of **BERNAL-RUIZ**, including but not limited to additional drug distributors and managers.

20.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21.    There is probable cause to believe that things that were once stored on the **DEVICE** may still be stored there, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    b. Therefore, deleted files, or remnants of deleted files, may reside in free

7

space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

22. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **DEVICE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **DEVICE** because:

a. Data on the storage medium can provide evidence of a file that was once on

8

the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its

use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

24.     Because this warrant seeks only permission to examine a devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

25.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the **DEVICE** described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

JOHN PARKER ELLIS
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on January 22, 2020.

SUZANNE MITCHELL
United States Magistrate Judge

11

## ATTACHMENT A

### Items to Be Searched

The property to be searched is one black Apple iPhone Xs, Model Number: MT962VC/A, Serial Number: G0NYW454KPFR, Phone Number: 405-836-3120, hereinafter the **DEVICE**. The **DEVICE** is currently located in secure evidence storage at DEA Oklahoma City, located at 901 NE 122nd Street, Ste 210, Oklahoma City, Oklahoma.

This warrant authorizes the forensic examination of the **DEVICE** for the purpose of identifying the electronically stored information described in Attachment B. Such searches will be conducted by law enforcement personnel who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control.

## ATTACHMENT B

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of the crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely, a violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846:

1. All records on the devices described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846 involving Eugenio Gadiel **BERNAL-RUIZ**, including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs smuggled as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording **BERNAL-RUIZ**'s schedule or travel; and

    e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the devices described in Attachment A at the time the things described in this warrant were created, edited, or deleted, including:

    a. logs, phonebooks, saved usernames and passwords, documents, and browsing history;

    b.   text messages, multimedia messages, email, email messages, chats, instant messaging logs, and other correspondence;

    c.   photographs;

    d.   records of Internet Protocol addresses used; and

    e.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

    3.    Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.